UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                 Case No. 21-CR-00005 (BHL)

TINA MONTEZON,

        Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Tina Montezon is a career nurse, who conspired with her co-defendant, Dr. John Whelan, to sell prescriptions for cash. She betrayed her profession and hurt vulnerable people, for money.

The government submits this memorandum to forecast its thinking regarding Defendant Montezon's appropriate sentence. This submission does not make an ultimate sentencing recommendation, as the government would prefer to first know the ultimate sentence imposed upon Defendant Whelan, in the interest of treating like defendants alike.

### I. Procedural Posture

Both defendants were indicted for conspiring to distribute controlled substances outside the course of a professional medical practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; maintaining a drug-

involved premises, in violation of 21 U.S.C. § 856(a)(1); and making false statements to federal agents, in violation of 18 U.S.C. § 1001. *See* Dkt. No. [1].

They were arraigned in January 2021 and pled not guilty. *See* Dkt. No. [5]. No pretrial motions were filed.

Defendant Whelan's counsel raised issues regarding their client's sanity and competency, and shortly before the related competency hearing, Defendant Montezon pled guilty to the conspiracy count and two distribution counts. *See* Dkt No. [100].

The Court ultimately found Defendant Whelan competent, Dkt. No. [123], and he pled guilty four days before trial, Dkt. No. [132].

Defendant Whelan is set for sentencing on Monday, March 4, 2024. Defendant Montezon will be sentenced on Friday, March 8, 2024.

## II. The Standard

As always, when the Court imposes sentence, it weighs the factors set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission; [and]

(6) the need to avoid unwarranted sentence disparities[.]

## III. The Appropriate Sentence

### A. The nature and circumstances of the offense

The Court is familiar with the facts here: these defendants sold illegitimate prescriptions to addicts, for cash, out of Defendant Montezon's basement. Defendant Montezon's role was to schedule customers, write prescriptions, and collect payments. To determine what prescriptions to write in exchange for cash, she simply asked "patients" what controlled substances they were interested in or had taken in the past.

This was grave misconduct. To wit:

Defendant Montezon's crimes were calculated and willful. At numerous points, pharmacists alarmed about Defendant Whelan's prescribing contacted Defendant Montezon, his nurse, regarding their concerns. When faced with these serious and repeated warnings, Defendant Montezon pressed on, continuing to work with Defendant Whelan in their illicit conspiracy.

Defendant Montezon hurt people. At least one patient, A.W., reached out directly to Defendant Montezon to explain that the conspirators' provision of drugs to A.W.'s romantic partner had pushed her partner "totally out of control." *See* Dkt No. 147-3. Her callous response speaks volumes: "OK but if [you partner] insist[s] what would you like me to do? Do I tell him about [your] text?" Id.

3

Defendant Montezon also helped conceal the conspirators' crimes, by maintaining pretextual medical "files" and lying about their misconduct when initially confronted by the DEA.

Finally, Defendant Montezon helped lead this conspiracy, appropriately acknowledging that she qualified for a leadership enhancement by virtue of supervising other "employees" at the fraudulent "clinic."

To be clear, the government believes Defendant Montezon is less culpable than Defendant Whelan. He was the "doctor" and prescriber, while she is a nurse; he made substantially more money from their crimes (just under $300,000 for him, as compared to just under $60,000 for her); he was verbally abusive to her (calling her a "bitch" and other names in multiple voicemails uncovered during the underlying investigation); and he spent his ill-gotten gains on a second mortgage, an Audi, and vacations, while she continued to live modestly.

But Defendant Montezon is a smart, hardworking woman who assiduously pushed this conspiracy forward. As one customer put it, she made sure the "trap"—a popular slang term for a drug house—was "boomin[g]." *See* Ex. 1. This was serious misconduct, involving premeditation, obstruction, and leadership, and Defendant Montezon's sentence should reflect the same.

B.  **Defendant's history and characteristics**

Defendant Montezon's history and characteristics counsel in favor of a less serious sentence. She is, by all accounts, the loving matriarch of a large family that depends on her. She has no criminal history. She has a decades-long record of productive

4

employment. By the government's lights, she deserves particular commendation for securing new employment, outside of the medical field, after indictment here. And while she did not need the money she earned by virtue of her crimes, Defendant Montezon's financial situation was considerably more strained than Defendant Whelan's.

C. **The need to promote respect for the law**

In her interview with the probation officer, Defendant Montezon represented that she committed the offenses of conviction because she "was trying to help people." Dkt. No. [151] at ¶36. In fact, both defendants committed the offenses of conviction to make money. *See* Ex. 2 (Defendant Montezon describing how she is reticent to stop working with Defendant Whelan, even though his prescribing and general behavior are problematic, because she makes "good money with him.").

The government believes that Defendant Montezon is now prepared to acknowledge that reality. Defendant' Montezon's candor does her credit and throws Defendant Whelan's continued deflection of responsibility in stark relief.

D. **The need for deterrence**

General deterrence is a compelling sentencing factor in pill mill cases like this one because nurses—like doctors—are logical. *See United States v. Thomas*, 21-CR-217-LA, Dkt. No. [38] at *14 (E.D. Wis. Oct. 27, 2022) (district court reasoned that "there's got to be" a sentence imposed "that would have a general deterrence effect").

It bears repeating: Defendant knew that Defendant Whelan's prescribing was illegal, dangerous, and hurting people. She persisted anyway. Her sentence should serve as a general deterrent to other nurses in similar positions.

5

### E. The advisory Guideline range

The government acknowledges that the specific range contemplated by the United States Sentencing Guidelines here is not especially helpful, given Defendant Montezon's unique role as a "pill mill" nurse and the weight borne by other Section 3553(a) factors.

### F. The need to avoid unwarranted disparities

As forecasted above, the government believes Defendant Montezon's ultimate sentence should be fashioned to reflect the distinctions between her and Defendant Whelan.

And in more general terms, the government notes that Defendant Montezon is somewhat analogous to Robert Hofschulz, the office manager and spouse to a "pill mill" prescriber previously sentenced in this district. *See United States v. Hofschulz*, 18-CR-145-PP, Dkt. No. [248] (E.D. Wis. Jan. 14, 2022) (husband/officer manager received 36 months' imprisonment). Mr. Hofshulz's case had important features not present here—he was older, his case proceeded to jury trial, his clinic sold Oxycodone, and his case involved a death—but both cases feature a non-prescriber who worked hard to facilitate their partner's provision of illegal prescriptions for money. His example should also inform the Court's approach here.

## IV. Conclusion

Defendant Montezon's crimes were willful and serious. She hurt people, in direct contravention of the professional mission she served for decades. She helped lead this conspiracy, and she worked to cover it up.

But her background suggests her crimes will not be repeated. And she has worked hard for decades, domestically and professionally, in service to a large and loving family.

She deserves a sentence including a term of imprisonment, albeit one that is meaningfully shorter that Defendant Whelan's.

Dated at Milwaukee, Wisconsin, this 1st day of March, 2024.

Respectfully submitted,

GREGORY J. HAANSTAD
United States Attorney

By: */s Kevin C. Knight*

Julie F. Stewart
Kevin C. Knight
United States Attorney's Office
Eastern District of Wisconsin
517 E. Wisconsin Ave - Rm 530
Milwaukee, WI 53202
Phone: 414.297.1700